## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:21-cr-16 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| AMBER LINGAFELT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.      Introduction

Pending before the Court is Defendant Amber Lingafelt's ("Ms. Lingafelt") Motion to Withdraw Guilty Plea. (ECF No. 1218). For the reasons that follow, the Court **DENIES** Ms. Lingafelt's Motion.

### II.     Factual and Procedural History

On November 9, 2021, a federal grand jury charged Ms. Lingafelt, along with thirty-one alleged co-conspirators, with the following offense at Count One of the Superseding Indictment:

> [K]nowingly, intentionally and unlawfully conspir[ing] with one another, and with persons both known and unknown to the grand jury, to distribute and possess with intent to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, 280 grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, 50 grams or more of methamphetamine, and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, all Schedule II controlled substances, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i), 841(b)(1)(A)(ii), 841(b)(1)(A)(iii), 841(b)(1)(A)(vi), and 841(b)(1)(A)(viii).
>
> In violation of Title 21, United States Code, Section 846.

(ECF No. 453 at 2–3).

On August 22, 2022, Ms. Lingafelt executed a plea agreement with the United States Attorney for the Western District of Pennsylvania. (ECF No. 1041-1 at 5). In that plea agreement, Ms. Lingafelt agreed to plead guilty to a lesser-included offense at Count One of the Superseding Indictment. (*Id.* at 1-2). Specifically, Ms. Lingafelt agreed to plead guilty to:

> [C]onspiracy to distribute and possess with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Schedule II controlled substance; a quantity of heroin, a Schedule I controlled substance; and a quantity of fentanyl, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(iii), and 841(b)(1)(C) [, and in violation of Title 21, United States Code, Section 846.]

(*Id.*).

Moreover, the parties stipulated that the "type and quantity of controlled substances attributable to [Ms.] Lingafelt in this case for purposes of § 2D1.1 of the Sentencing Guidelines is a converted drug weight of 167 kilograms." (*Id.* at 3–4).

Finally, the parties agreed that, with respect to the lesser-included offense at Count One of the Superseding Indictment, the penalty that may be imposed upon Ms. Lingafelt by the Court is: a term of imprisonment of not less than five (5) years to a maximum of forty (40) years; a fine of up to $5,000,000; a term of supervised release of at least four (4) years; and a special assessment under 18 U.S.C. Section 3013 of $100. (*Id.* at 3). The parties also agreed that Ms. Lingafelt's overall offense level under the Sentencing Guidelines is 21. (*Id.* at 4). Given Ms. Lingafelt's overall offense level of 21, her criminal history category of IV, and the statutory mandatory minimum sentence of five (5) years, her guideline imprisonment range under the Sentencing Guidelines is sixty (60) to seventy-one (71) months. (ECF No. 1122 at 23).

On September 21, 2022, Ms. Lingafelt appeared before the Court and, pursuant to the plea agreement, pleaded guilty to the lesser-included offense at Count One of the Superseding Indictment. (ECF No. 1041). During the course of Ms. Lingafelt's change of plea hearing: (1) the Court accepted the plea agreement, (2) the Assistant United States Attorney summarized the evidence that the Government would have presented at trial; (3) the Court found that there was a factual basis for Ms. Lingafelt's guilty plea; (4) Ms. Lingafelt and her attorney signed the plea form; and (5) Ms. Lingafelt was adjudged guilty of the lesser-included offense at Count One of the Superseding Indictment. (*Id.*).

On March 1, 2023, Ms. Lingafelt filed her "Motion to Withdraw Plea[.]" (ECF No. 1218). On March 16, 2023, the Government submitted its "Response in Opposition to Motion to Withdraw Guilty Plea[.]" (ECF No. 1234). Finally, on March 20, 2023, Ms. Lingafelt filed her Reply to the Government's Response. (ECF No. 1235).

III.   **Legal Standard**

"[A] guilty plea is a grave and solemn act to be accepted only with care and discernment." *Brady v. United States*, 397 U.S. 742, 748 (1970). "Once accepted, a guilty plea may not automatically be withdrawn at the defendant's whim." *United States v. James*, 928 F.3d 247, 253 (3d Cir. 2019) (quoting *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001)). "Instead, a defendant may withdraw a plea of guilty before sentencing if [she] 'can show a fair and just reason for requesting the withdrawal.'" *Id.* (quoting FED. R. CRIM. P. 11(d)(2)(B)). To "determine if there has been such a showing, '[a] district court must consider three factors… (1) whether the defendant asserts [her] innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal.'" *Id.* (quoting

*United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003)). The "burden of demonstrating [the first two] factors 'is substantial' and 'falls on the defendant[.]'" *Id.* (quoting *Jones*, 336 F.3d at 252).[1] Moreover, whether "to grant a motion to withdraw a guilty plea lies within the discretion of the district court." *Id.*

Regarding the first factor, "'[b]ald assertions of innocence … are insufficient to permit a defendant to withdraw her guilty plea. Assertions of innocence must be buttressed by facts in the record that support a claimed defense.'" *United States v. Hill-Johnson*, 806 F. App'x 114, 117–18 (3d Cir. 2020) (quoting *Brown*, 250 F.3d at 818) (internal quotation marks and citations omitted)).

Regarding the second factor, "'[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged [her] guilt by pleading guilty.'" *Id.* at 118 (quoting *Brown*, 250 F.3d at 815) (internal quotation marks and citation omitted).

Finally, regarding the third factor, a district court need not address this factor "'when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea.'" *Id.* (quoting *Jones*, 336 F.3d at 255).

## IV.    Discussion

### A.    The Parties' Arguments

Ms. Lingafelt's Motion focuses on two memoranda issued by the Attorney General of the United States on December 16, 2022. (ECF No. 1218 at 1).

---

[1] With respect to the third factor, it is the Government that must demonstrate "that it would be prejudiced by the withdrawal of a guilty plea." *Jones*, 336 F.3d at 255 (emphasis added).

In the first memorandum that Ms. Lingafelt references, entitled *Memorandum for All Federal Prosecutors: General Department Policies Regarding Charging, Pleas[], and Sentencing*, the Attorney General wrote the following:

> The proliferation of provisions carrying mandatory minimum sentences has often caused unwarranted disproportionality in sentencing and disproportionately severe sentences. For this reason, charges that subject a defendant to a mandatory minimum sentence should ordinarily be reserved for instances in which the remaining charges (i.e., those for which the elements are also satisfied by the defendant's conduct, and do not carry mandatory minimum terms of imprisonment) would not sufficiently reflect the seriousness of the defendant's criminal conduct, danger to the community, harm to victims, or other considerations outlined above. Prosecutors, in the exercise of their discretion and through discussions with their supervisors, should determine whether the remaining charges would, in fact, capture the gravamen of the defendant's conduct and danger to the community and yield a sanction "sufficient" to satisfy the considerations outlined above.

(*Id.* at 2–3) (internal citation omitted). Further, the Attorney General indicated that this guidance applies to plea agreements. (*Id.* at 3). Finally, he stated that in cases "in which charges have already been brought prior to the effective date of these memoranda, but in which a final judgment after sentencing has not been imposed by the district court, future decisions in such cases should be informed by the policies contained in these memoranda." (*Id.*) (internal quotation marks and citation omitted).

In the second memorandum that Ms. Lingafelt references, entitled *Memorandum for All Federal Prosecutors: Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases*, the Attorney General wrote that federal prosecutors should not charge "the drug quantity that triggers a mandatory minimum … if a defendant meets the following" criteria:

> The defendant's relevant conduct does not involve: the use of violence, the direction to another to use violence, the credible threat of violence, the possession of a weapon, the trafficking of drugs to or with minors, or the death or serious

> bodily injury of any person; [t]he defendant does not have a significant managerial role in the trafficking of significant quantities of drugs; [t]he defendant does not have significant ties to a large-scale criminal organization or cartel, or to a violent gang; and the [d]efendant does not have a significant history of criminal activity that involved the use or threat of violence, personal involvement on multiple occasions in the distribution of significant quantities of illegal drugs, or possession of illegal firearms.

(*Id.*). In that same document, the Attorney General indicated that the Department of Justice ("DOJ") opposes the "crack-to-powder sentencing disparity." (*Id.*). Indeed, the Attorney General stated that "[a]t sentencing, prosecutors should advocate for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine." (*Id.*) (internal quotation marks and citation omitted).

On the basis of these two memoranda, Ms. Lingafelt contends that if she were to enter a new plea agreement today, she would no longer face a mandatory minimum term of imprisonment of five (5) years, and her guideline range would be fifteen (15) months to twenty-one (21) months. (*Id.* at 4–5). Ms. Lingafelt therefore asserts that it would be "fair and just" for the Court to permit her to withdraw her previous plea and enter a new plea. (*Id.* at 5).

Finally, Ms. Lingafelt asserts that the Government would not be prejudiced if she were to withdraw her current plea and enter into another plea "with the lower guidelines and no mandatory minimum[,]" a "resolution [that] would be in line with current Justice Department policies[.]" (*Id.*).

In response, the Government argues that Ms. Lingafelt's "current dissatisfaction with the bargained-for plea to a lesser-included-offense—which is apparently derived from her understanding of an internal memorandum issued by the Attorney General of the United States—is not a basis to withdraw a valid guilty plea." (ECF No. 1234 at 7). Indeed, with respect to the

first factor that district courts consider in resolving motions to withdraw guilty pleas, the Government notes that Ms. Lingafelt "entered the guilty plea under oath and in open court[,]" and she does not now assert her innocence. (*Id.* at 5). With respect to the second factor, the Government contends that the two memoranda and policies found therein "are internal Department of Justice policies, intended solely for the guidance of attorneys for the government, and are not intended to, nor do they, create a substantive or procedural right or benefit, enforceable at law, and they may not be relied upon by a party to litigation with the United States." (*Id.* at 6). Finally, the Government asserts that the Court need not examine the third factor because Ms. Lingafelt "has failed to meaningfully assert her innocence[] or provide a fair and just reason for withdrawing her plea[.]" (*Id.* at 7).

In Ms. Lingafelt's Reply to the Government's Response, she states that it is "baffling that the Government would take the position that sentencing Ms. Lingafelt to a mandatory minimum of five (5) years is a just result when the sentence directly contradicts their own policies." (ECF No. 1235 at 1). Further, Ms. Lingafelt argues that under Supreme Court precedent, "'[a] court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law.'" (*Id.* at 2) (quoting *United States v. Caceres*, 440 U.S. 741, 749 (1979)). In this case, Ms. Lingafelt contends that "compliance with the DOJ's regulation in relation to the crack/powder ratio is mandated by the Constitution because [not] using a 1:1 crack/powder ratio is a violation of Ms. Lingafelt's equal protection and due process." (*Id.*). Indeed, she asserts that the "decision to use any crack/powder ratio other than 1:1 has no rational basis and thus is a violation of equal protection and due process." (*Id.*).

**B.      Neither the Constitution Nor Federal Law Require the Court to Enforce Ms. Lingafelt's Reading of the DOJ Policy Memoranda**

The Court begins by addressing the Supreme Court's holding in *Caceres* that a "court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." 440 U.S. at 749. In this case, the Court finds that compliance with the Attorney General's policy memoranda is required by neither the Constitution nor any other federal law.[2]

At the outset, the Court reiterates that Ms. Lingafelt pleaded guilty to "conspiracy to distribute and possess with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack," among other controlled substances, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(iii), and 841(b)(1)(C), and in violation of Title 21, United States Code, Section 846. (ECF No. 1041-1 at 1–2; ECF No. 1042). In light of this particular plea, Ms. Lingafelt asserts that compliance with the DOJ's "regulation in relation to the crack/powder ratio is mandated by the Constitution because [not] using a 1:1 crack/powder ratio is a violation of Ms. Lingafelt's equal protection and due process." (ECF No. 1235 at 2).

However, the Third Circuit has "upheld the constitutionality of both the federal drug statutes (21 U.S.C. §§ 841(b)(1) & 846) and the guideline provisions (U.S.S.G. § 2D1.1) that treat crack cocaine offenses more severely than offenses involving an equal quantity of cocaine

---

[2] Notably, the Third Circuit has stated that DOJ "guidelines and policies do not create enforceable rights for criminal defendants." *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005); *see also United States v. Moore*, 822 F.2d 35, 37–38 (8th Cir. 1987) ("[W]e hold that [defendant] is not entitled to [withdraw his guilty plea on the basis of an internal DOJ policy] because the policy is strictly internal and confers no substantive rights on the accused.").

powder." *United States v. Alton*, 60 F.3d 1065, 1068–70 (3d Cir. 1995); *see also United States v. Shields*, 281 F. App'x 100, 101 (3d Cir. 2008) ("We have also held that the mandatory minimum sentences and the 100:1 ratio do not violate a defendant's right to due process. Our holdings that neither the mandatory minimum sentence nor the 100:1 ratio violates the Fifth or Eighth Amendments are consistent with the positions adopted by our sister circuits.") (internal quotation marks and citations omitted); *Riggins v. United States*, No. 06-CR-700, 2011 WL 6210673, at *3 (E.D. Pa. Dec. 14, 2011) (noting that the "Third Circuit has upheld the constitutionality of the statutory mandatory minimum sentences for crack offenses and the 100:1 crack-to-powder cocaine ratio against Eighth Amendment, as well as Equal Protection, challenges[,]" and the "Third Circuit has consistently adhered to these holdings."). Therefore, the Constitution does not *require* compliance with the Attorney General's December 16, 2022, memoranda, at least in the context of the facts before this Court.[3]

---

[3] In *Caceres*, the Supreme Court also held that the case before it did not implicate the Due Process Clause because the defendant had not "reasonably relied on agency regulations promulgated for his guidance or benefit and … suffered substantially because of [the violation of those regulations] by the agency." 440 U.S. at 752–53. Indeed, the defendant in *Caceres* could not "reasonably contend that he relied on the [Internal Revenue Service ("IRS")] regulation, or that its breach had any effect on his conduct." *Id.* at 753.

In this case, Ms. Lingafelt has not explicitly raised an argument along these lines. (ECF Nos. 1218, 1235). But even if she had, such an argument would be unavailing for two reasons. First, the titles and substance of the Attorney General's policy memoranda indicate that they were provided to guide federal prosecutors, not criminal defendants. (ECF No. 1218). And second, the memoranda were promulgated after Ms. Lingafelt entered her guilty plea. (ECF Nos. 1042, 1218). Therefore, she cannot contend that she "reasonably relied on agency regulations promulgated for [her] guidance or benefit[.]" *Caceres*, 440 U.S. at 752–53. Accordingly, the Court has no indication that the Due Process Clause is offended by the Government's actions relative to Ms. Lingafelt.

Finally, Ms. Lingafelt's lone Equal Protection Clause claim in this case is that the "decision to use any crack/powder ratio other than 1:1 has no rational basis and thus is a violation of Equal Protection[.]" (ECF No. 1235 at 2). It appears to the Court that Ms. Lingafelt is simply arguing that the application of the statutory mandatory minimum and Sentencing Guidelines, which treat crack cocaine differently than powder cocaine, violates the Equal Protection Clause. (*Id.*) (asserting that the "*legislative decision* of the *Fair*

Further, federal law cannot be said to require compliance with those memoranda because federal law expressly provides for a mandatory minimum sentence of five (5) years for conspiring to distribute and possess with intent to distribute more than 28 grams of a mixture and substance containing a detectable amount of cocaine base. 21 U.S.C. § 841(b)(1); *United States v. Dixon*, 648 F.3d 195, 197 (3d Cir. 2011) ("[T]he five-year mandatory minimum penalty for possessing crack cocaine is not triggered until a person possesses twenty-eight grams[.]").

Finally, the Court notes that there is no argument in this case that the Sentencing Guidelines result in a range other than that of 60–71 months (accounting for the statutory mandatory minimum). (ECF Nos. 1218, 1235).[4]

---

*Sentencing Act of 2010* and the *United States Sentencing Commission's decision* to enshrine an 18:1 crack/powder would be analyzed under the rational basis test.") (emphasis added). However, even if Ms. Lingafelt is making a broader Equal Protection Clause argument, she has offered no point of comparison showing that the Government's treatment of her in this case violates that Clause. (ECF No. 1235); *Caceres*, 440 U.S. at 752 ("[Defendant's] conversations were monitored without the approval of the [DOJ], whereas the conversations of others in a similar position would, assuming the IRS generally follows its regulations, be recorded only with [DOJ] approval. But this difference does not even arguably amount to a denial of equal protection."); *cf. United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012) ("To establish selective prosecution, the defendant must provide evidence that persons similarly situated have not been prosecuted and that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor.") (internal quotation marks and citation omitted). Indeed, the Court cannot say with absolute certainty that the Government's actions in opposing Ms. Lingafelt's Motion to Withdraw Guilty Plea violate the DOJ's internal policy memoranda, let alone the Equal Protection Clause.

[4] The Court notes that Ms. Lingafelt filed an "Amended Position with Respect to Sentencing Factors[,]" (ECF No. 1219), in which she contends that, based on the DOJ's policy memoranda, her guideline range should be lower than the guideline range presently found within the Presentence Investigation Report ("PSR"). (*Id.* at 1–2). However, that argument is premised on the ideas that: (1) the guideline range should be calculated based on a 1:1 crack powder ratio and (2) applying the DOJ's memoranda, Ms. Lingafelt would not face a mandatory minimum sentence of five years today. (*Id.* at 2). In other words, Ms. Lingafelt does not argue that her guideline range is errant because of any provision in federal law or the Sentencing Guidelines. (ECF No. 1219). Therefore, the Court need not consider this argument any further at this juncture. The Court will consider this argument to the extent appropriate at the time of sentencing. However, the Court notes that, based on the plea that Ms. Lingafelt entered and this Memorandum Opinion and Order, the Court will be bound to sentence Ms. Lingafelt to no less than the statutory mandatory minimum of five (5) years of imprisonment.

Therefore, the Court holds that, on the facts presently before it, neither the Constitution nor federal law mandate compliance with the Attorney General's December 16, 2022, memoranda. With that finding in place, the Court turns its attention squarely to the three factors it must consider in deciding whether to permit Ms. Lingafelt to withdraw her guilty plea. *James*, 928 F.3d at 253 ("(1) whether the defendant asserts [her] innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal.") (internal quotation marks and citation omitted).

### C.      The Court Denies Ms. Lingafelt's Motion to Withdraw Her Guilty Plea

Regarding the first factor—whether Ms. Lingafelt asserts her innocence—she explicitly states that she "has not asserted her innocence. She has already admitted her guilt and is not trying to re-assert her innocence or reclaim her right to trial." (ECF No. 1235 at 1). Rather, she "wants to withdraw her plea and enter into a new plea under current DOJ policies." (*Id.*). Therefore, Ms. Lingafelt has not shown that the first factor supports a withdrawal of her guilty plea.

Regarding the second factor—the strength of Ms. Lingafelt's reasons for withdrawing her guilty plea—the Court finds, for three interrelated reasons, that the policy memoranda do not constitute a strong basis upon which to grant Ms. Lingafelt's Motion.

First, Ms. Lingafelt knowingly and voluntarily admitted in open court that she conspired to distribute and possess with intent to distribute a sufficient quantity (28 grams or more) of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, to warrant a mandatory minimum sentence of five (5) years of imprisonment and a guideline imprisonment range of 60–71 months. (ECF Nos. 1041, 1042). As the Court

explained above, *see supra* Section IV.B, that mandatory minimum sentence and advisory guideline range comport fully with the United States Constitution and federal legislation. Simply put, the Court is hesitant to permit Ms. Lingafelt to withdraw her guilty plea where: (1) she admitted to engaging in conduct that Congress has decided warrants a prison term of at least five years and (2) her sole basis for going back on her agreement is an internal DOJ policy memorandum that provides no enforceable rights to her. *Wilson*, 413 F.3d at 389; *see also United States v. Ponce*, No. 15-CR-156 (KBF), 2015 WL 4254058, at *1, *4 (S.D.N.Y. July 14, 2015) ("Nor will the Court permit withdrawal of a legally sound plea on the ground that the statutorily mandated sentence does not comport with [an internal DOJ policy]. The Government is free to enforce [that policy] through its charging decisions—but to ask the judiciary, an independent branch of government, to assist in that effort raises serious issues of separation of powers … This Court has no authority to ignore, or adopt new exceptions to, this statutorily mandated minimum sentence … and will not do so indirectly by allowing defendant to withdraw a plea to a crime of which he is indisputably guilty.").

Second, and relatedly, the Court is reluctant to reach a holding that would require it to parse internal DOJ memoranda and determine how the prosecution might choose to exercise its discretion in Ms. Lingafelt's case if she were to withdraw her plea.[5] *Delay v. United States*, 602 F.2d

---

[5] By way of example, in this case, Ms. Lingafelt's request to withdraw her guilty plea is premised on the notion that if she were permitted to withdraw her guilty plea, the Government, when applying the policy memoranda, would offer her a more favorable plea agreement today. (ECF No. 1218). If the Court cannot conclusively find (or at least find with relative confidence) that Ms. Lingafelt would in fact get a better plea agreement today, the Court sees little (if any) reason to permit Ms. Lingafelt to withdraw her plea. But a finding by the Court that Ms. Lingafelt would in fact getter a better plea agreement today would require the Court to know exactly how the policy memoranda, which implicate issues of prosecutorial discretion, would apply in her case. (*Id.* at 2–4). Moreover, such a finding would require the Court to effectively have a seat at the plea-bargaining table, know exactly what options the Government has at its disposal, and

173, 179 (8th Cir. 1979) ("[T]he Attorney General has announced a policy for the internal operation of the Justice Department. He is free to change that policy at any time and is free to enforce it as he sees fit. To further complicate criminal litigation by involving the courts in this activity would be unwise and have an adverse effect on the administration of criminal justice."); *United States v. Anderson*, No. 19-CR-771(VB), 2023 WL 1070220, at *2 (S.D.N.Y. Jan. 27, 2023) (stating, in a case raising the issue of the Attorney General's December 16, 2022, memorandum, that the Court would not "speculate as to what charging decision would be made today.").

Finally, precedent from the compassionate release context supports this Court's conclusion that the memoranda do not constitute a strong basis for permitting Ms. Lingafelt to withdraw her guilty plea.[6] Indeed, in *United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021), the Third Circuit held that "nonretroactive changes to the [18 U.S.C.] § 924(c) mandatory minimums also cannot be a basis for compassionate release." *Id.* at 261. The Third Circuit explained that those changes do not constitute an "extraordinary and compelling" reason for early release from prison. *Id.* Because nonretroactive changes to statutory mandatory minimums do not constitute an extraordinary and compelling reason for a sentence reduction, the Court is strongly inclined to find that internal policy memoranda, which *may* result in a lower sentence for Ms. Lingafelt if she

---

know that those options would only leave the Government the choice of entering into an agreement with Ms. Lingafelt that would result in a lesser sentence than she now faces. For all of these reasons, the Court is reluctant to find that the two policy memoranda constitute a sufficient basis upon which to permit Ms. Lingafelt to withdraw her plea.

[6] While compassionate release motions under 18 U.S.C. Section 3582(c) are brought by individuals who have already been sentenced, the Court finds that caselaw from the compassionate release context is helpful in resolving Ms. Lingafelt's motion because Ms. Lingafelt is in a similar position to an individual advancing a motion for compassionate release. Indeed, both Ms. Lingafelt and the defendant advancing a compassionate release motion have shed the presumption of innocence and been deemed guilty of one or more offenses. Further, both Ms. Lingafelt and the defendant advancing a compassionate release motion are concerned with one issue—the length of the term of imprisonment that they will face.

were to enter a new plea agreement today, are not a sufficient basis upon which to grant her motion. Finally, multiple courts have found that the very internal policy memorandum cited by Ms. Lingafelt does not constitute an extraordinary or compelling reason for compassionate release. *Anderson*, 2023 WL 1070220, at *2 (finding that the fact that the Attorney General's December 16, 2022, memorandum "sets forth new charging and sentencing policies with respect to mandatory minimum drug offenses does not constitute an extraordinary or compelling reason warranting a reduction of [defendant's] lawfully-imposed 60-month prison sentence."); *United States v. Ford*, No. 10-CR-20129-07-KHV, 2023 WL 1434302, at *6 (D. Kan. Feb. 1, 2023) ("To determine whether to grant compassionate release, however, the Court does not revisit the prosecutor's charging decision and speculate whether or to what extent the prosecutor would charge or prosecute the case differently if presented with the same facts today. Defendant has not shown that the purported change in guidance on charging decisions is an extraordinary and compelling reason for his release."); *United States v. Farley*, No. 5:20-CR-00018-KDB-DSC-1, 2023 WL 2544328, at *2 (W.D.N.C. Mar. 16, 2023) ("The defendant argues that this change in DOJ internal policy warrants a sentence reduction. The Court disagrees. The internal policy of the DOJ is irrelevant to this Court's analysis. Rather, the Court is guided by the statute passed by Congress and the Sentencing Guidelines, both of which recognize a distinction between crack cocaine and powder cocaine. The Court therefore finds that the change in DOJ internal policy does not constitute an extraordinary and compelling reason for a reduction.") (internal citation omitted).

Therefore, for all of the foregoing reasons, the Court finds that the second factor does not support Ms. Lingafelt's request to withdraw her guilty plea. *Moore*, 822 F.2d at 37–38 ("[W]e hold

that [defendant] is not entitled to [withdraw his guilty plea on the basis of an internal DOJ policy]

because the policy is strictly internal and confers no substantive rights on the accused.").

Accordingly, because Ms. Lingafelt has failed to demonstrate that either of the first two

factors support the withdrawal of her guilty plea, the Court need not address the third factor,

*Hill-Johnson*, 806 F. App'x at 118, and the Court will deny her Motion.

**V.     Conclusion**

For the foregoing reasons, the Court denies Ms. Lingafelt's Motion to Withdraw Guilty

Plea. (ECF No. 1218).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:21-cr-16 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| AMBER LINGAFELT, | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER OF COURT</u>

**AND NOW**, this ___17th___ day of May, 2023, upon consideration of Defendant Amber Lingafelt's Motion to Withdraw Guilty Plea, (ECF No. 1218), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Defendant's Motion is **DENIED**.

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**